COMPONENT SYSTEMS CORPORATION, a Nevada Cor-
poration; LAS VEGAS PLYWOOD AND LUMBER,
INC., a Nevada Corporation; ST. GEORGE PLY-
WOOD AND LUMBER, INC., a Utah Corporation;
ROGER DIEHL, an Individual; CLAUDE DIEHL, an
individual; and Violet Diehl, an Individual, Peti-
tioners, v. EIGHTH JUDICIAL DISTRICT COURT OF
THE STATE OF NEVADA, Respondent.

No. 14751

January 4, 1985        692 P.2d 1296

[Rehearing denied May 8, 1985]

*Ordowski & Eads,* Las Vegas, for Petitioners.

*Vargas & Bartlett,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Over a four year period, beginning March 28, 1979, Walter Heller Western, Inc. (Heller, Inc.) entered into a series of financing agreements with the corporate petitioners. To secure the Heller, Inc. loans, Component Systems Corp., Las Vegas Plywood & Lumber, Inc. and St. George Plywood & Lumber, Inc. each executed an "Accounts Financing Security Agreement," an "Inventory Loan Security Agreement" and a "Chattel Mortgage Security Agreement." All loans to the corporations were cross-collateralized. Each corporate loan was also guaranteed by the other two corporations.

The corporations' officers also executed personal guaranties of the corporate loans. Heller, Inc. contends that the personal guaranties were secured by deeds of trust on real estate held by the officers as individuals. Specifically, on March 6, 1979, Roger, Claude and Violet Diehl guaranteed payment of the Heller, Inc. loans to St. George Plywood. On the same day, Claude and Violet executed a trust deed on the "St. George property" in Washington County, Utah, and on the "Salt Lake City property" in Davis County, Utah, to secure "the payment of all indebtedness . . . owing by St. George Plywood & Lumber, Inc. to Walter E. Heller Western Incorporated."

On June 7, 1979, Roger, Claude and Violet guaranteed the Heller, Inc. loans to Las Vegas Plywood. Again, on the same day, Claude and Violet secured "the payment of all indebtedness

. . . owing by Las Vegas Plywood and Lumber, Inc. to Walter E. Heller Western Incorporated'' by executing a trust deed on the "Nellis property" in Clark County, Nevada. This trust deed was subsequently modified to state that it guaranteed all of Claude's and Violet's obligations under their *guaranty* dated June 7, 1979. On October 23, 1981, Roger secured "the payment of all indebtedness . . . owing by Las Vegas Plywood & Lumber, Inc. to Walter E. Heller Western Incorporated" by executing a deed of trust on the "Viking property" in Clark County.

Finally, on April 23, 1982, Roger guaranteed the Heller loans to Component Systems. This guaranty, along with the payment of all indebtedness of Component Systems Corporation, was secured with a deed of trust executed on the same date by Roger on the "Henderson property" in Clark County.

Around August of 1982, defaults occurred on all of the corporate loans. A demand letter was sent on October 1, 1982, by Heller, Inc. to all three corporations and the personal guarantors detailing all defaults in payments which amounted to $1,400,367.58. The defaults were not cured, so Heller caused notices of breach and election to sell to be recorded on all the secured properties.[1] The trustee's sales have been postponed.

On December 15, 1982, the petitioners brought an action in the Eighth Judicial District Court against Heller, Inc. and two of its officers. The complaint alleged (1) that Heller, Inc. breached the financing agreements by failing to extend credit, to relinquish and to reconvey certain security and to allocate the debt; (2) that Heller, Inc. was over-secured and wrongfully rejected a tender of real property in lieu of foreclosure; and (3) trade libel. Heller, Inc. answered on January 31, 1983, and raised ten counterclaims. In the counterclaims Heller, Inc. asserted its rights to possession of the corporations' inventory and chattels, to repayment of the loans and to payment by the *corporate* guaranties. Heller, Inc. did not counterclaim for payment on the *personal* guaranties.

On February 11, 1983, the petitioners moved for reconveyance of the deeds of trust which purportedly secured the personal guaranties. The petitioners argued that all of the loans, corporate guaranties and personal guaranties constituted one single cross-collateralized debt secured by the various deeds of trust. Because Heller, Inc. had initiated a trustee's sale, the petitioners continued, its counterclaims on the underlying corporate loans and

---

[1]Two of the five parcels of real estate allegedly securing the individual guaranties are located in Utah. The deeds of trust for the Utah parcels require Utah law to be applied. The three remaining parcels of real estate are in Clark County, Nevada. There exists no apparent distinction between the Utah and Nevada one action rules. *Compare* NRS 40.430 *with* Utah Rev. Stat. § 78-37-1.

guaranties violated the "one action" rules of Nevada and Utah. The petitioners concluded that Heller, Inc. had waived its security and the petitioners were entitled to an order reconveying the deeds of trust.

The district court, however, found that Heller, Inc. had not violated the "one action" rule and denied the motion on March 15, 1983. The petitioners have raised the same arguments in an original petition for a writ of mandamus filed on April 7, 1983. The court ordered an answer and Heller, Inc. responded on July 29, 1983.[2]

In Coombs v. Heers, 366 F.Supp 851 (D.Nev. 1973), the federal district court held that the promisee on a guaranty could not be barred by Nevada's one action rule from attaching the real and personal property of the guarantors even though the promisee had not exhausted the trust deed securing the underlying debt. There, the guarantors argued that their unsecured guaranty and the underlying debt which was secured by a deed of trust constituted one debt and that the one action rule required that the promisee first exhaust the security. *Id.* at 853. This argument, however, was rejected because of the traditional separateness of the guaranty and its underlying debt. *Id.* at 854. This result was approved in First National Bank v. Barengo, 91 Nev. 396, 536 P.2d 487 (1975). In *Barengo,* this court rejected the guarantor's attempt to assert the one action rule as a bar to the promisee's recovery on the guaranty where neither the deed of trust securing the underlying debt nor the debt itself had been exhausted. Again, the decision was predicated on the rule that a contract of guaranty is to be separately considered. *Id.* at 397, 536 P.2d at 487. Based on similar reasoning, the *Coombs-Barengo* rule has been extended to prohibit the application of the protections of Nevada's deficiency judgment statutes, NRS 40.451, *et seq.,* to the contract of guaranty. *See* Manufacturers & Traders Trust v. Dist. Ct., 94 Nev. 551, 583 P.2d 444 (1978). In Thomas v. Valley Bank of Nevada, 97 Nev. 320, 629 P.2d 1205 (1981), this court reaffirmed the *Manufacturers & Traders* rule by noting the distinction in Nevada between "guarantors, whose obligations are wholly separate from the principal obligation guaranteed, and sureties, who are co-obligors with the principal debtor." Thomas, at 323, 629 P.2d at 1207. *See also* Glens Falls Ins. v. First Nat'l Bank,

---

[2]The petitioners filed a reply to Heller, Inc.'s answer. The reply does not raise any new issues nor did it affect the outcome of this petition. Nevertheless, Heller, Inc. has filed a motion to strike the reply because this court did not order any briefs on the petition pursuant to NRAP 21(b). Because Heller, Inc.'s substantial rights have not been prejudiced by petitioner's reply brief, we hereby order the motion denied. *See* NRAP 2.

83 Nev. 196, 427 P.2d 1 (1967); Short v. Sinai, 50 Nev. 346, 259 P.2d 417 (1927). The court noted that, although this traditional distinction remained in force in Nevada, it had been abolished, pursuant to Cal. Civ. Code § 2787, in California.

The instant case is the negative of the *Coombs* and *Barengo* cases. Here, the guarantors are attempting to assert the one action rule as a bar to the action foreclosing on the deeds of trust allegedly securing the guaranties because the promisee/lender has also initiated an action against the underlying corporate loans and guaranties. Although in *Coombs* and *Barengo* the underlying debt, not the guaranty, was secured, this distinction is not legally relevant. Thus, the dispositive issue in the case at hand is whether all of the transactions constitute one debt or are separate contracts of guaranties and loans.

All of the individual guaranties were executed on the same form. That form provides that the guaranty is to be governed by California law. Because California has abolished the distinctions between guarantors and sureties, *see* Cal. Civ. Code § 2787 (1939),[3] the petitioners contend that the personal guarantors are "co-makers" on the corporate obligations. Therefore, the petitioners conclude, the one action rule is applicable.

Heller, Inc.'s sole response to this argument is to cite a footnote in Union Bank v. Gradsky, 71 Cal.Rptr. 64, 67 n. 3 (Cal.App. 1968), which states that the California one action rule is inapplicable to suits by a secured creditor against a guarantor, endorser or other surety. In *Union Bank,* the California court utilized the principles of estoppel to bar the lender from recovering from the guarantor after exercising its power of sale under the deed of trust securing the underlying obligation. The *Union Bank* court estopped the lender from recovering from the guarantor because the operation of California's anti-deficiency statute[4] effectively

---

[3]Cal. Civ. Code § 2787 provides that:

The distinction between sureties and guarantors is hereby abolished. The terms and their derivatives, wherever used in this code or in any other statute or law of this State now in force or hereafter enacted, shall have the same meaning, as hereafter in this section defined. A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor. Guaranties of collection and continuing guaranties are forms of suretyship obligations, and except in so far as necessary in order to give effect to provisions specially relating thereto, shall be subject to all provisions of law relating to suretyships in general.

[4]Cal. Code of Civ. Pro. § 580d provides in pertinent part that:

No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust. . . .

destroyed the guarantor's subrogation rights against the principal debtor. Thus, the issue now under consideration was not dispositive in *Union Bank* and footnote 3 is properly considered as *dicta*. Additionally, both cases relied on by *Union Bank* in footnote 3 involved transactions which occurred before the 1939 amendment to § 2787 which abolished the distinctions between guarantors and sureties. *See* Everts v. Matteson, 132 P.2d 476 (Cal. 1942); Loeb v. Christie, 57 P.2d 1303 (Cal. 1936).

Since the 1939 amendment of § 2787 eliminating the distinction between guarantors and sureties, it is clear that the rule in contracts of "guaranty" that the obligations of the principal debtor and that of the "guarantor" were entirely independent obligations was abolished. Wiener v. Van Winkle, 78 Cal.Rptr. 761, 768 (Cal.App. 1969). In California, a guaranty is now a form of suretyship obligation and is subject to all provisions of law relating to suretyship. American Guaranty Corp. of Cal. v. Stoody, 41 Cal.Rptr. 69, 70 (Cal.App. 1964). Unlike a contract of guaranty, a contract of suretyship, which according to § 2787 the personal "guarantors" in this case executed, is an "engagement which is primary or original and absolute or unconditional." 38 Am.Jur.2d Guaranty § 15 (1968).

Given the distinctions between guarantors and sureties drawn in *Coombs* and its progeny and the fact that pursuant to Cal. Civ. Code § 2787 the personal "guarantors" are co-obligors of the corporate borrowers, all the transactions under review should be treated as one loan for the purposes of the one action rule. This conclusion is strengthened by the form of the deeds of trust which allegedly secured the "guaranties." Of the five trust deeds, three of them make no mention of securing the "guaranties." Those three deeds state that they are securing the indebtedness of the *corporate borrowers* owing to Heller, Inc. The fourth deed of trust initially contained similar language but was subsequently modified to clarify that it was securing the individual's guaranty. The fifth deed states that it secures both the guaranty and the corporate indebtedness. It is apparent that, at least as to four of the deeds of trust, the parties themselves intended the deeds to secure the corporate loans, not the personal guaranties of those loans.

Heller, Inc. also raises a policy argument against the imposition of the one action rule in the present case. It notes that two of the traditional purposes of the one action rule were to prevent harassment of the debtor and to avoid a multiplicity of actions. *See* Nevada Wholesale Lumber Co. v. Myers Realty, Inc., 92 Nev. 24, 544 P.2d 1204 (1976); Paramount Ins., Inc. v. Rayson

& Smitley, 86 Nev. 644, 472 P.2d 530 (1970); McMillian v. United Mortgage Co., 82 Nev. 117, 412 P.2d 604 (1966). These purposes would not be effectuated, Heller, Inc. contends, because it was compelled to raise the counterclaims against the corporate loans and guaranties by NRCP 13(a).[5]

"Chapter 40 of the Nevada Revised Statutes provides a comprehensive scheme of creditor and debtor protection with respect to the foreclosure and sale of real property subject to security interests." Keever v. Nicholas Beers Co., 96 Nev. 509, 512, 611 P.2d 1079, 1082 (1980). Under that scheme, once a creditor has commenced a trustee's sale of the security, the creditor may usually obtain a personal judgment against the debtor only by complying with NRS 40.451 *et seq. See generally* Nevada Land & Mtge. v. Hidden Wells, 83 Nev. 501, 504-505, 435 P.2d 198, 200 (1967). NRS 40.455 requires that before the court may award a deficiency judgment the security must be sold and a hearing to determine the fair market value of the security at the date of the sale must be conducted pursuant to NRS 40.457. Because at the time of serving the pleading Heller, Inc. had not sold the security nor had it conducted a hearing pursuant to NRS 40.457, it had no claim for a personal judgment against the petitioners. Thus, NRCP 13(a) did not compel Heller, Inc. to raise the counterclaims against the corporate loans and guaranties. *See* Esquire, Inc. v. Varga Enterprises, 185 F.2d 14, 18 (7th Cir. 1950); United States v. Chelsea Towers, Inc., 12 Fed.R.Serv.2d § 13a.12 (case 1) (D. N.J. 1969); 3 Moore's Federal Practice § 13.14 [1] at 13-22 (1983).

In summary, in light of Cal. Civ. Code § 2787 and the form of the trust deeds themselves, the personal "guaranties" and the underlying corporate debts are to be treated as one obligation. That obligation was secured by several deeds of trust upon which Heller, Inc. had instituted nonjudicial sales. When Heller, Inc. counterclaimed on its rights under the corporate loans and obligations, it was, in effect, simultaneously seeking relief under the security and the underlying debt. Those counterclaims were not compulsory under NRCP 13(a). Consequently, Heller, Inc. vio-

---

[5]NRCP 13(a) provides in pertinent part that:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .

lated NRS 40.430 and forfeited its security. Accordingly, the writ of mandamus shall issue and the district court is hereby ordered to issue an order requiring Heller, Inc. to reconvey all the deeds of trust given to Heller, Inc. by the petitioners.