Filed 7/14/14  Copenbarger v. McNaughton CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LLOYD COPENBARGER, as Trustee, | |
| Plaintiff and Appellant, | G047978 |
| v. | (Super. Ct. No. 30-2009-00310879) |
| KENT A. MCNAUGHTON, | ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |
| Defendant and Appellant. | |

It is ordered that the opinion filed herein on June 23, 2014, be modified as follows:

On page 15, the last sentence of the Disposition, beginning "McNaughton shall recover" is deleted and the following sentence is inserted in its place:

Copenbarger shall recover his costs on appeal.

This modification does not change the judgment.

Copenbarger's petition for rehearing is DENIED.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


ARONSON, J.

Filed 6/23/14 Copenbarger v. McNaughton CA4/3 (unmodified version)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LLOYD COPENBARGER, as Trustee,<br><br>   Plaintiff and Appellant,<br><br>      v.<br><br>KENT A. MCNAUGHTON,<br><br>   Defendant and Appellant. | G047978<br><br>(Super. Ct. No. 30-2009-00310879)<br><br>O P I N I O N |

Appeals from a judgment of the Superior Court of Orange County, Hugh Michael Brenner, Judge. (Retired Judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § of the Cal. Const.) Reversed.

HamptonHolley, George L. Hampton, Colin C. Holley and Jeremy T. Katz for plaintiff and Appellant.

Prenovost, Normandin, Bergh & Dawe, Michael G. Dawe and Kristin F. Godeke Baines for Defendant and Appellant.

\*          \*          \*

Lloyd Copenbarger (Copenbarger), as trustee of the Hazel I. Maag Trust appeals from a judgment rendered after a bifurcated trial; the first part after the rendition of a jury verdict, and the second part after a bench trial on affirmative defenses. The case involves defendant Kent A. McNaughton's guaranty of a $3 million loan made by the trust to Newport Harbor Offices & Marina LLC (Newport Harbor). The guaranty was executed by Paul Copenbarger and McNaughton, joint owners of Newport Harbor. The jury found McNaughton liable on the guaranty and in its verdict awarded Copenbarger over $2.5 million plus attorney fees. At the bench trial, the court ruled the guaranty was exonerated because, without McNaughton's consent, Copenbarger "made the strategic decision to add additional debt to the guaranty by making payments of approximately $350,000.00[] to a junior lien holder." The court further ruled the guaranty was exonerated under Civil Code section 2845 (all further undesignated statutory references are to this code) when Copenbarger "ignored McNaughton's request to pursue collection from the principal obligor under the promissory note, . . . or co-guarantor Paul Copenbarger, and when [Copenbarger] refused to pursue foreclosure of the real property collateral securing the promissory note."

Copenbarger contends the court erred in finding the guaranty was exonerated. McNaughton appeals in the event we reverse the trial court's ruling the guaranty was exonerated. He contends the court erred in denying his motion for JNOV following the jury verdict and that Copenbarger failed to mitigate his damages.

We reverse the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The loans and the guaranty*

Newport Harbor is owned and managed by Paul Copenbarger and McNaughton. It entered into a sublease, acquiring a ground lease for a specified period. By quit claim deed, Newport Harbor also gained title to improvements on the property. As part of this transaction, Copenbarger loaned $3 million to Newport Harbor. The loan was secured by a first priority deed of trust on the improvements and the sublease. At the same time, Newport Harbor borrowed $1.15 million from Plaza Del Sol Real Estate Trust (Plaza Del Sol), executing a note secured by a second priority deed of trust on the improvements and the sublease. Newport Harbors' co-owners, Paul Copenbarger and McNaughton executed a written continuing personal guaranty on Copenbarger's loan to Newport Harbor.

Approximately five years later, Newport Harbor defaulted on the note held by Copenbarger and he delivered a notice of default to Newport Harbor. Subsequently, Copenbarger sued McNaughton to enforce the guaranty. After the suit against McNaughton had been filed, Copenbarger entered into an agreement with the holder of the second deed of trust, Plaza Del Sol, agreeing to make certain payments on its note, preventing a default to Plaza Del Sol. Under this agreement, Copenbarger paid Plaza Del Sol $350,549. Also, approximately two years after the suit was filed, McNaughton sent Copenbarger a "demand that [Copenbarger] exhaust all remedies against debtor including power of sale under trust deed prior to continuing pursuit of judgment on alleged guaranty of McNaughton." (Bold and capitalization omitted.) The demand cited section 2845 and Code of Civil Procedure section 996.440.

## 2. *The waiver language in the guaranty*

The "continuing guaranty" is contained in some six pages of small font. (Bold and capitalization omitted.) Among its provisions are the following:

"Guarantor absolutely and unconditionally guarantees the punctual payment when due . . ., of all obligations of Borrower now or later existing under the Loan Documents . . . . The term 'indebtedness' and 'obligations' are used in their most comprehensive sense and includes all debts, obligations, and liabilities of Borrower incurred or created, with or without notice to Guarantor . . . .

"The liability of Guarantor under this Guaranty will be absolute and unconditional irrespective of: [¶] (i) any change . . . of, any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the Loan Documents . . .; [¶] (ii) any exchange, release, or nonperfection of any collateral, or any release or amendment or waiver of or consent to departure from any other guaranty. . . . [¶] . . . [¶]

"Guarantor agrees that: [¶] (i) the obligations under this Guaranty are joint and several and are independent of and in addition to the undertakings of Borrower pursuant to the Loan Documents, any evidence of indebtedness issued in connection with the Loan, any deed of trust or security agreement given to secure the Loan, any other guarantees given in connection with the Loan, and any other obligations of Guarantor to Lender; [¶] (ii) a separate action may be brought to enforce the provisions of this Guaranty whether Borrower is a party in any action or not; [¶] (iii) Lender may at any time, or from time to time, in its sole discretion: [¶] (A) extend or change the time of payment or performance or the manner, place, or terms of payment or performance of any of the Obligations; [¶] (B) exchange, release, or surrender any of the collateral security, or any part of it, by whomever deposited, which is now or may later be held by Lender in

4

connection with any of the Obligations; [¶] (C) sell or purchase any of the collateral at public or private sale . . . .

"Guarantor waives: [¶] (i) presentment, demand, protest, notice of acceptance, notice of dishonor, notice of nonperformance, and any other notice with respect to any of the Obligations and this Guaranty . . . or in giving any notice to or making any claim or demand on Guarantor; [¶] (ii) any right to require Lender to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any remedy in Lender's power."

"This Guaranty is intended as a final expression of this agreement of guaranty and is intended also as a complete and exclusive statement of the terms of this agreement. No course of prior dealings between Guarantor and Lender, no usage of the trade, and no parol or extrinsic evidence of any nature will be used or will be relevant to supplement, explain, contradict, or modify the terms or provisions of this Guaranty."

### 3. The trial

The parties stipulated the case would be tried in two phases: first, a jury trial on McNaughton's obligation on the guaranty; and second, a bench trial on the affirmative defenses asserted by McNaughton. At the conclusion of the first phase, the jury returned a verdict for Copenbarger in the amount of $2,734,100 plus attorney fees. During the second phase, the court reviewed the evidence admitted during phase one and concluded McNaughton's obligations under the guaranty were exonerated.

### 4. The judgment

The court held "[u]nder Civil Code § 2819, McNaughton's obligations under the guaranty were exonerated when, without McNaughton's consent, [Copenbarger] made the strategic decision to add additional debt to the guaranty by

5

making payments of approximately $350,000.00 to [Plaza Del Sol] . . . . Such payments were a material alteration of the 'original obligation' guaranteed by McNaughton without the consent of McNaughton. Under [§ 2819] that material alteration of the 'original obligation' constitutes the basis for statutory exoneration. [¶] Under [§ 2845], McNaughton's obligations under the guaranty were exonerated when [Copenbarger] ignored McNaughton's request to pursue collection from the principal obligor under the promissory note, . . . or co-guarantor Paul Copenbarger, and when [Copenbarger] refused to pursue foreclosure of the real property collateral securing the promissory note."

The court continued: "Pursuant to *Union Bank v. Gradsky* (1968) 265 Cal.App.2d 40 [*Gradsky*], and *Cathay Bank v. Lee* (1993) 14 Cal.App.4th 1533 [Cathay Bank], the language in the subject guaranty is insufficient to waive the protections afforded a guarantor under . . . §§ 2819 and 2845. Sufficient evidence exists to prove that a Miller & Starr standard form guaranty was used as a base form to draft the subject guaranty. The evidence also established without opposition that substantial waiver language which existed in the original Miller & Starr base form guaranty was actually excised from the form in the process of drafting the guaranty form eventually employed by the parties. . . . The removal of substantial waiver language from the base Miller & Starr form in the drafting process reflects an objective intent of the parties to eliminate from the guaranty any waiver of the defenses arising from . . . §§ 2819, 2845, and other sections specifically referenced in the language removed from the base Miller & Starr form."

The court concluded its statement of decision by holding "McNaughton did not waive the statutory defenses reflected in the language removal from the Miller & Starr form, and that he is exonerated of any obligation under the guaranty."

6

DISCUSSION

*1. Copenbarger's appeal*

*a. The statutory scheme*

Section 2819 provides: "A surety is exonerated, except so far as he or she may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

Section 2845 provides: "A surety may require the creditor . . . to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue, and which would lighten the surety's burden; and if the creditor neglects to do so, the surety is exonerated to the extent to which the surety is thereby prejudiced."

*Gradsky, supra,* 265 Cal.App.2d 40 held that, by conducting a nonjudicial foreclosure, the debtor impaired the guarantor's subrogation rights to recover a deficiency judgment against the creditor. The borrower, having impaired the guarantor's rights, was held to be estopped from asserting its rights against the guarantor. "The estoppel is raised as a matter of law to prevent the creditor from recovering from the guarantor after the creditor has exercised an election of remedies which destroys the guarantor's subrogation rights against the principal debtor." (*Id.* at p. 41.) This decision came in spite of a provision in the guaranty "'I waive . . . any right to require the holder of this within instrument to proceed against the maker or against any other person or to apply any security it may hold or to pursue any other remedy.'" (*Id.* at pp. 41-42.) The court concluded the waiver clause was insufficient because it did "not specifically waive the guarantor's defense based upon an election of remedies which destroys both the

7

guarantor's subrogation rights and his right to proceed against the principal obligor for reimbursement.  In absence of an explicit waiver, we shall not strain the instrument to find that waiver by implication." (*Id.* at p. 48.)

The court recognized however that, because of the waiver, the lender "could have sued [the guarantor] upon his guarantee for the full amount of the unpaid balance of the principal obligation without proceeding against either [the debtor] or the security." (*Gradsky, supra,* 265 Cal.App.2d at p. 43.)  If this procedure were followed, the guarantor would have obtained a subrogation right against the debtor including the right to pursue either a judicial or a nonjudicial sale of the security.  (*Id.* at p. 45.)

*Cathay Bank*, *supra*, 14 Cal.App.4th 1533 came to the same conclusion as *Gradsky, supra,* 265 Cal.App.2d 40.  The lender there also sued to recover a deficiency between the amount owing on the defaulted loan and the amount recovered after a nonjudicial foreclosure on the security.  The court followed *Gradsky*, although there the guaranty provided, "'Guarantor authorizes bank at its sole discretion . . . to:  . . . (h) exercise any right or remedy it may have with respect to the Credit or any collateral securing the Credit . . . including . . . exercise of power of sale . . . and Guarantor shall be liable to Bank for any deficiency resulting from the exercise by it of any such remedy, even though any rights which Guarantor may have against others might be . . . destroyed.'" (*Id.* at p. 1536, fn. omitted.)  *Cathay Bank* held that this language was insufficient to prevent exoneration of the guarantor.  (*Id.* at p. 1539.)  The court stated "the language in [the waiver] paragraph . . . of this case falls short of constituting an 'explicit' or 'specific' waiver of the *Gradsky* defense.  While it is true that [the] paragraph . . . tells the guarantor he or she may lose subrogation rights, it does nothing to tell the guarantor that the very fact of the loss of those subrogation rights *itself* has legal significance—namely that it confers an immunity from a deficiency judgment." (*Ibid.*)

8

In *Mariners Sav. & Loan Assn. v. Neil* (1971) 22 Cal.App.3d 232, the guaranty provided that "'[g]uarantors waive any right to require [lender] to (a) proceed against Borrowers; (b) proceed against or exhaust any security held from Borrowers; or (c) pursue any other remedy in [lender's] power whatsoever.'" (*Id.* at p. 236.) The guaranty also expressly waived identified statutes dealing with foreclosures and deficiency judgments by referring to the applicable statutes by number. These waivers were held to be sufficient to prevent application of the *Gradsky* rule.

Thus, the most that can be said about *Gradsky* and *Cathay Bank* is that, where the lender conducts a nonjudicial foreclosure, it is estopped from pursuing the guarantor unless the guaranty contains an express waiver of the antideficiency statute. But the present case does not involve a nonjudicial foreclosure. Should guarantor exercise his subrogation rights, he could either conduct a judicial foreclosure or bear the results of the antideficiency statute. The election is his.

Subsequent to *Gradsky* and *Cathay Bank*, the legislature adopted section 2856. Subdivision (a) of that section provides: "(a) Any guarantor or other surety, including a guarantor of a note or other obligation secured by real property or an estate for years, may waive any or all of the following: [¶] (1) The guarantor or other surety's rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to the guarantor or other surety by reason of Sections 2787 to 2855, inclusive. [¶] (2) Any rights or defenses the guarantor or other surety may have in respect of his or her obligations as a guarantor or other surety by reason of any election of remedies by the creditor. [¶] (3) Any rights or defenses the guarantor or other surety may have because the principal's note or other obligation is secured by real property or an estate for years. These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the

9

application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation."

Subdivision (b) of section 2856 provides: "A contractual provision that expresses an intent to waive any or all of the rights and defenses described in subdivision (a) shall be effective to waive these rights and defenses without regard to the inclusion of any particular language or phrases in the contract to waive any rights and defenses or any references to statutory provisions or judicial decisions."

Copenbarger argues that subsequently enacted section 2856 overruled the holdings in *Gradsky* and *Cathay Bank.* Two recent appellate decisions have recognized section 2856 was encacted in response to *Cathay Bank.* (*Gramercy Investment Trust v. Lakemont Homes Nevada, Inc.* (2011) 198 Cal.App.4th 903, 911; *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 544-645.) In fact, the latter case stated section 2856's purpose is "to restore the laws regarding waivers to its state prior to *Cathay Bank.*" (*WRI Opportunity Loans II, LLC v. Cooper, supra,* 154 Cal.App.4th at p. 545.) The broad language of section 2856 enabling the guarantor to waive many of its rights "without regard to the inclusion of any particular language or phrases in the contract (§ 2856, subd. (b))," may well have been intended to supersede the holdings in *Gradsky* and *Cathay Bank.* But we need not decide that here, because both of these cases dealt with a lender having prejudiced the rights of the guarantor by conducting a nonjudicial foreclosure and thus preventing the guarantor from exercising its subrogation rights. As noted, that was not the case here. And, as we noted earlier, *Gradsky* expressly recognized that, under the waiver clause there involved, the lender "could have sued [the guarantor] upon his guarantee for the full amount of the unpaid balance of the principal obligation without proceeding against either [the debtor] or the security." (*Gradsky, supra,* 265 Cal.App.2d at p. 43.) Which is exactly what happened here. Thus, the trial court erred in relying on *Gradsky* and *Cathay Bank.*

10

And whether or not subsequently enacted section 2856 overruled the holdings in *Gradsky* and *Cathay Bank*, the statute does apply to the transaction at issue here. We therefore hold that the failure to use particular language or to cite specific code sections by number does not invalidate the waiver provisions contained in the guaranty.

Furthermore, the waivers contained in the guaranty clearly and unequivocally entitled Copenbarger to proceed against the guarantor without having to proceed against the borrower: "a separate action may be brought to enforce the provisions of this Guaranty whether Borrower is a party in any action or not" and "Guarantor waives . . . [¶] . . . any right to require Lender to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any remedy in Lender's power."

### b. *The court's use of extrinsic evidence*

Aside from its reliance on *Gradsky* and *Cathay Bank*, the court also relied on differences between the language of the guaranty and a form in Miller & Starr. It appears the guaranty borrowed heavily from the form, appearing in the latter treatise whether it copied another form partially based on Miller & Starr or directly from it. But the form of the guaranty that was used did not include certain waiver language contained in Miller & Starr. Were we to consider this evidence as McNaughton urges us to do, we could conclude substantial evidence supports the trial court's conclusion.

But, we are limited in our right to consider extrinsic evidence. "Although the parol evidence rule results in the exclusion of evidence, it is not a rule of evidence but one of substantive law. [Citation.] It is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement. The written terms supersede statements made during the negotiations. Extrinsic evidence of the agreement's terms is thus *irrelevant*, and cannot be relied upon." (*Riverisland*

11

*Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1174.) The guaranty was an integrated contract. "Under the parol evidence rule, when a contract is integrated . . ., extrinsic evidence cannot be used to vary or contradict the instrument's express terms. [Citations.] This rule is based on sound logic and policy; when a contract is reduced to writing, it is presumed to contain all of the material terms, and it cannot reasonably be presumed that the parties would intend two contradictory terms to be part of the same agreement. [Citation.]" (*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1061.)

Parol evidence may be considered where it is necessary "to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud." (Code Civ. Proc., § 1856, subd. (g).) The language of the written guaranty with which we are presented here is clear and unambiguous. McNaughton argues "the court made the permissible inference that the parties intended not to waive . . . § 2845, . . . and [,] to the extent the [waiver language] conflicts with this intent[,] the contract is ambiguous." This turns the parol evidence rule on its head: to paraphrase McNaughton, as long as we can show that the parties intended something other than what they stated in their contract, the contract is ambiguous and evidence to contradict the written contract should be considered. Such a construction of the ambiguity exception to the parol evidence rule in effect deprives the rule of any meaning.

As to the additional debt created when making the approximate $350,000 payment to the holder of the junior lien, the guaranty provides: "The term 'indebtedness' and 'obligations' are used in their most comprehensive sense and includes all debts, obligations, and liabilities of Borrower incurred or created, with or without notice to Guarantor, . . . and however arising . . . ." The contract unambiguously covered this payment as well. Similarly, McNaughton's claim the guaranty fails because of

12

Copenbarger's failure to obtain a "cure agreement" from the lessor on the ground lease cannot be sustained because of the broad waiver clauses in the guaranty noted above.

### c. Conclusion

Because the court erred in ruling McNaughton was exonerated under *Gradsky* and *Cathay Bank*, and erred in using extrinsic evidence to invalidate portions of the guaranty, we reverse the trial court's ruling with respect to the affirmative defenses. None of them were established. We next turn to McNaughton's appeal.

## 2. McNaughton's appeal

### a. Propriety of motion and standard of review

McNaughton appeals from the trial court's denial of a motion for JNOV, following the jury verdict. Copenbarger argues that because normally such a motion is made by a party against whom an adverse judgment has been rendered and that because the judgment here was in favor of McNaughton, the motion is not available to him. But Code of Civil Procedure section 629, which establishes the authority for such a motion, provides "a party against whom a verdict has been rendered" may make such a motion. Because the jury verdict here was adverse to McNaughton, he was entitled to make the motion. We will thus consider his appeal.

"On appeal from the denial of a JNOV motion, we 'review[ ] the record in order to make an independent determination whether there is any substantial evidence to support the jury's findings.' [Citation.] 'The scope of the review is limited to determining whether there is any substantial evidence, contradicted or not, to support the jury's verdict. [Citation.] Applying the substantial evidence rule, we resolve "all conflicts in the evidence and all legitimate and reasonable inferences that may arise therefrom in favor of the jury's findings and the verdict. [Citations.]' [Citation.] Thus,

13

this court must accept as true the evidence supporting the verdict, disregard conflicting evidence, and indulge every legitimate inference to support the verdict. [Citation.] Accordingly, we do not weigh the evidence or judge the credibility of the witnesses. [Citation.] If sufficient evidence supports the verdict, we must uphold the trial court's denial of the JNOV motion.' [Citation.]" (*Scott v. Ford Motor Co.* (2014) 224 Cal.App.4th 1492, 1499.)

### b. *Substantial evidence supports the jury verdict*

McNaughton first urges "[t]he jury found for [Copenbarger] on the issue of primary obligor" and that, "[o]n the contrary, [Copenbarger's] uncontradicted testimony clearly shows that [Copenbarger] looked to [McNaughton] and Paul as the primary source of repayment of the debt." The record reference to the first statement leads us to a discussion between court and counsel on an unrelated subject, while the record reference to the second statement leads us to a portion of the jury voir dire. When no record references are made, a court of review may treat a point or issue as waived. (*Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 229.)

Nevertheless, the guaranty itself makes it clear that the lender had the option to treat either the borrower or the guarantor as the primary obligee. This is substantial evidence and Copenbarger's views of who was the primary obligee does not alter this.

McNaughton next argues Copenbarger failed to mitigate Newport Harbor's damages. Again the record reference is erroneous. The other record reference to Copenbarger's testimony correctly refers to testimony that he rejected an earlier purchase agreement which would have brought him "five or $6,000 from making [him] whole." Whether Copenbarger's failure to accept this offer in light of his right to recover the entirety of the loan constituted a breach of his duty to mitigate damages was for the jury.

14

The mere fact that he could have avoided a lawsuit by accepting this loss does not constitute substantial evidence Copenbarger failed to mitigate damages. McNaughton makes a similar argument relating to an earlier offer made by a third party. Again it was for the jury to determine whether failure to accept the offer constituted a failure to mitigate damages.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court to determine whether Copenbarger is entitled to attorney fees and, if so, the amount thereof. The court shall enter judgment on the verdict. McNaughton shall recover his costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.

15