[No. E051384. Fourth Dist., Div. Two. Aug. 24, 2011.]

GRAMERCY INVESTMENT TRUST, Plaintiff and Respondent, v.
LAKEMONT HOMES NEVADA, INC., et al., Defendants and Appellants.

**COUNSEL**

Saied Kashani for Defendants and Appellants.

Morrison & Foerster, Miriam A. Vogel, Gregory B. Koltun, Benjamin J. Fox and Douglas J. Beteta for Plaintiff and Respondent.

**OPINION**

**RAMIREZ P. J.**—Following a foreclosure proceeding which resulted in a deficiency, plaintiff Gramercy Investment Trust (Gramercy) sued to recover the unpaid balance of a real estate mortgage loan, naming as defendants Lakemont Homes Nevada, Inc., and Lakemont Communities Nevada, LLC (collectively referred to as Lakemont), who were the guarantors of the loan. Gramercy made a motion for summary judgment for the full balance of the unpaid loan, approximately $31 million, without adjusting for the fair market value of the property following the collapse of the real estate market. The trial court granted the motion for summary judgment and Lakemont appeals.

On appeal, Lakemont argues that the trial court failed to adhere to the choice of law provision contained in the guaranty agreement in applying California law. We affirm.

## BACKGROUND

Fiesta de Vida, LLC, owned real property located in Riverside County which was to be developed by FDV Investment LLC. In order to obtain financing for the project, title to the property was transferred to FDV Investment LLC (the borrower). The borrower was an entity managed by Lakemont Homes, Inc., a California corporation. On March 30, 2007, Gramercy lent $35 million to the borrower, and the loan was secured by a deed of trust. The loan agreement provided that it would be governed by the laws of the State of New York.

On the same date, and in connection with this financial transaction, defendants Lakemont Homes Incorporated, Lakemont Homes Nevada, Inc., Lakemont Communities, LLC, and Lakemont Communities Nevada, LLC, executed a payment guarantee in favor of Gramercy. The terms of the guaranty included a choice of law provision whereby the guaranty, like the loan documents themselves, would be governed by and construed in accor-

dance with the substantive laws of New York. However, the guaranty included certain waivers: the guarantors agreed to waive any rights they might have pursuant to California Code of Civil Procedure sections 580a[1] and 726, subdivision (b),[2] and Civil Code section 2856.[3] Additionally, the guaranty agreement specifically provided that the amount of the guaranteed obligation may be reduced only by the price for which the collateral is sold at foreclosure sale, even if the collateral is worth more than the sale price.

The borrower failed to pay the debt on the maturity date, so notices of default were served by Gramercy on the borrower and the various Lakemont defendants. Subsequently, Gramercy filed a complaint for judicial foreclosure against the borrower (first cause of action) and the Lakemont defendants (guarantors) (second cause of action). After notifying the borrower and the Lakemont defendants of the default, Gramercy exercised its right to foreclose on the property by means of a trustee sale. At the trustee's sale, the property was sold for $5.75 million, by credit bid to GKK Fiesta de Vida Owner LP, Gramercy's assignee to the deed of trust, on November 18, 2009.

On February 3, 2010, Gramercy made a motion for summary adjudication of issues as to the second cause of action against two of the Lakemont defendants.[4] On May 20, 2010, the court granted the motion. Judgment in favor of Gramercy was entered in the amount of $33,537,994.65, plus costs. On July 22, 2010, Lakemont appealed.

## DISCUSSION

On appeal, Lakemont argues that the trial court erred by failing to apply New York substantive law in the calculation of the judgment, as provided in the loan agreements and the guaranty, asserting that under New York's

---

[1] Code of Civil Procedure section 580a governs the computation of fair market value of property for which a money judgment is sought for the balance due upon an obligation secured by a deed of trust and provides that the court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of the sale exceeds the fair market value of the real property.

[2] Code of Civil Procedure section 726, subdivision (b), relates to actions for foreclosure of mortgages, providing that the amount of the judgment is to be the difference between the sale price of the property and the fair market value, but in no event greater than the difference between the amount of the debt and the sale price.

[3] Civil Code section 2856 permits guarantors or other sureties to waive certain rights and defenses, including the protections afforded by Code of Civil Procedure sections 580a and 726.

[4] As to Lakemont Homes, Inc., and Lakemont Communities, LLC, the motion for summary adjudication was scheduled to be heard separately, in order to comply with the timing requirements of section 437c of the Code of Civil Procedure.

antideficiency law the judgment would be limited to the difference between the sale price and the fair market value of the property at the time of the trustee's sale. While we agree, in principle, with the notion that New York law governs, we disagree with the premise that New York's antideficiency protections were available to Lakemont in the face of Lakemont's express agreement to the contrary.

### a. *Standard of Review*

Summary judgment is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 [91 Cal.Rptr.3d 532, 203 P.3d 1127]; Code Civ. Proc., § 437c, subds. (b), (*o*).) A moving party plaintiff is entitled to summary judgment if it proves each element of a cause of action entitling it to judgment on that cause of action. (*Beutz v. County of Riverside* (2010) 184 Cal.App.4th 1516, 1529 [109 Cal.Rptr.3d 851] [Fourth Dist., Div. Two], citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The purpose of a motion for summary judgment is to discover whether the parties possess evidence which requires the fact-weighing procedures of a trial. (*Soto v. County of Riverside* (2008) 162 Cal.App.4th 492, 496 [76 Cal.Rptr.3d 21], quoting *City of Oceanside v. Superior Court* (2000) 81 Cal.App.4th 269, 273 [96 Cal.Rptr.2d 621].)

We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116], citing *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) The interpretation of a choice of law provision on undisputed facts presents a purely legal question, subject to de novo review. (*Brack v. Omni Loan Co., Ltd.* (2008) 164 Cal.App.4th 1312, 1320 [80 Cal.Rptr.3d 275].) Because we review independently, or de novo, the trial court's stated reasons for granting summary judgment are not binding on us, we review the ruling, not the rationale. (*Soto v. County of Riverside, supra*, 162 Cal.App.4th at p. 496; *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

### b. *Analysis*

#### (1) *Contractual Choice of Law Provisions Do Not Compel Application of New York Antideficiency Laws.*

■ Choice of law provisions in agreements are enforceable, unless grounds exist for not enforcing them. (*1-800-Got Junk? LLC v. Superior Court*

(2010) 189 Cal.App.4th 500, 512 [116 Cal.Rptr.3d 923].) To determine the enforceability of contractual choice of law provisions, California courts apply the principles set forth in the Restatement Second of Conflict of Laws, which reflect a strong policy favoring enforcement of such provisions. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 465–466 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) Using this approach, the court first determines either (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. (*Id.* at p. 466.) If neither of these tests is met, the court need not enforce the parties' choice of law; however, if either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. (*Farb v. Superior Court* (2009) 174 Cal.App.4th 678, 686 [94 Cal.Rptr.3d 586], quoting *Nedlloyd*, at p. 466.)

If the proponent of the choice of law clause demonstrates that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties' choice will generally be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 917 [103 Cal.Rptr.2d 320, 15 P.3d 1071].)

The trial court concluded that notwithstanding the choice of law provision in the loan and guaranty agreements, the New York antideficiency statutes (N.Y. Real Prop. Acts. Law [R.P.A.P.L.] § 1371) are inapplicable when the real property is located outside the State of New York. New York cases interpreting the New York law are in accord. (See *Provident Savings Bank & Trust Co. v. Steinmetz* (1936) 270 N.Y. 129, 132–133 [200 N.E. 669]; see also *Integrity Trust Co. v. Posch* (1939) 13 N.Y.S.2d 973, 976.) New York State practice guides subscribe to and espouse this view, also. (Bergman on New York Mortgage Foreclosures (2011) Election of Remedies and Initiating the Foreclosure Procedure, § 7.12; *id.*, Deficiency Judgments, § 34.02 [rules governing deficiency judgments have application only to mortgages secured by property situated in N.Y. State]; Stein on New York Commercial Mortgage Transactions (2008) New York Choice of Law and Forum, § 17.04 [N.Y. courts have traditionally held that these N.Y. rules do not apply when real property collateral is located outside of N.Y.].)

New York recognizes the in rem jurisdiction a sister state has over property located in that state. (See *FDIC v. De Cresenzo* (N.Y.App.Div. 1994) 207 A.D.2d 823, 824 [616 N.Y.S.2d 638, 639].) Under the interest-analysis

approach employed by New York decisions, the law of the jurisdiction having the greatest interest in the litigation will be applied. (*Union Realty Partners, Ltd. v. Menicucci* (N.Y.App.Div. 2000) 270 A.D.2d 339, 340 [704 N.Y.S.2d 611].) Where New York has sufficient contacts, a contractual choice of law provision adopting New York law may be applied to foreclosures involving out-of-state property. (*Ibid.*) Here, the only contact with New York is plaintiff's place of business; the contract was executed in California, the debt was created and guaranteed in California, the default occurred in California and the real property is located in California.

■ Lacking sufficient contacts, the New York antideficiency statute is inapplicable to judicial foreclosure proceedings involving out-of-state property. Lakemont's reliance on non-New York decisions interpreting the applicability of New York law to out-of-state property (*Chase Manhatten Bank, N.A. v. Greenbriar North Section II* (Tex.App. 1992) 835 S.W.2d 720; *Citibank, N.A. v. Errico* (App.Div. 1991) 251 N.J. Super. 236 [597 A.2d 1091]) is not persuasive. ■ When a question arises in the courts of this state as to the construction and effect of a statute of another state, our courts will follow the interpretation placed upon such statute by the court of last resort of the enacting state. (*Jones v. Jones* (1960) 182 Cal.App.2d 80, 83 [5 Cal.Rptr. 803].) The decisions of other state courts interpreting the statute of the enacting state are not controlling.

■ More significantly, even if we applied the provisions of R.P.A.P.L. section 1371, pursuant to the choice of law provisions of the guaranty agreement, it would not relieve defendant of liability. R.P.A.P.L. section 1371 does not absolutely prohibit deficiency judgments; instead it is a statute of limitations. (*Arbor National Commercial Mortgage, LLC v. Carmans Plaza, LLC* (N.Y.App.Div. 2003) 305 A.D.2d 622, 623 [759 N.Y.S.2d 683].) As such, it is a procedural statute, like the limitations of actions found in New York's Civil Practice Law and Rules section 201 et seq. During oral argument, Lakemont conceded procedural rights could be waived.

The choice of law provisions in the guaranty contract are therefore not controlling. But because California law also provides similar protection for debtors against certain deficiency judgments, it is of little consequence whether we apply New York law or California law. The real question is whether Lakemont waived those protections or defenses, as we discuss in the next part.

(2) *Express Waiver of Antideficiency Protections Results in Estoppel to Assert Those Protections.*

The second basis for the trial court's ruling related to the terms of the guaranty agreement itself, by which Lakemont waived applicability of

California Code of Civil Procedure sections 580a and 726, subdivision (b), and expressly waived any antideficiency protection available, as provided by Civil Code section 2856.

■ Civil Code section 2856 provides that any guarantor or other surety, including a guarantor of a note secured by real property, may waive rights and defenses that would otherwise be available to the guarantor, including antideficiency protections provided by Code of Civil Procedure sections 580a and 726. The statute was enacted in response to the holding of *Cathay Bank v. Lee* (1993) 14 Cal.App.4th 1533 [18 Cal.Rptr.2d 420], which imposed stringent requirements on the wording and interpretation of a guarantor's waiver of a defense arising from the principal's rights under the antideficiency statutes. (See *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 545 [65 Cal.Rptr.3d 205].)

A guarantor is one who promises to answer for the debt or perform the obligation of another when the person fails to pay or perform. (Civ. Code, § 2787.) Although certain antideficiency protections (e.g., Code Civ. Proc., § 580d) are applicable to guarantors, a guarantor may waive such defenses (*Union Bank v. Gradsky* (1968) 265 Cal.App.2d 40, 48 [71 Cal.Rptr. 64]; see also *River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1415 [45 Cal.Rptr.2d 790]), whereas a debtor may not (*Union Bank v. Wendland* (1976) 54 Cal.App.3d 393, 408 [126 Cal.Rptr. 549]; *California Bank v. Stimson* (1949) 89 Cal.App.2d 552, 554 [201 P.2d 39]). Where a contracting party is sufficiently aware of the circumstances and consequences of a waiver, contractual waiver/estoppel will be found: "[P]arties who have expressed their mutual assent are bound by the contents of the instrument they have signed, and may not thereafter claim that its provisions do not express their intentions or understanding." (*City of Santa Cruz v. Pacific Gas & Electric Co.* (2000) 82 Cal.App.4th 1167, 1176 [99 Cal.Rptr.2d 198], citing *Estate of Wilson* (1976) 64 Cal.App.3d 786, 801–802 [134 Cal.Rptr. 749]; see also Evid. Code, § 622.) Particularly where the parties making the guaranties are sophisticated businesspersons with expertise in real estate development, a finding of waiver is appropriate where the language of the waiver evinces such an intention. (*River Bank America*, at p. 1417, citing *Bank of America v. Waters* (1962) 209 Cal.App.2d 635, 638 [26 Cal.Rptr. 9].)

■ New York cases interpreting section 1371 of the R.P.A.P.L. have also enforced guaranty agreements containing provisions waiving the protections of the New York antideficiency law. (See *First National Bank v. Proem-A-Net Economics Corp.* (N.Y.App.Div. 1997) 235 A.D.2d 753, 756 [652 N.Y.S.2d 405, 408].) Under New York law, a guaranty is separate and distinct from the

mortgage, and imposes greater liability on the guarantor. (*Anderson Credit & Leasing Corp. v. McEvoy* (N.Y.App.Div. 1997) 236 A.D.2d 569, 570 [654 N.Y.S.2d 32, 33].) Thus, even under New York law, a guarantor may be found to have waived defenses otherwise available under the antideficiency statutes.

The language of the waiver in the guaranty agreement in the present case is clear, unequivocal, and in language expressing an intention to waive any rights and defenses including any rights or defenses based on Code of Civil Procedure section 580a, 580b, 580d, or 726. The waiver went further to waive all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as nonjudicial foreclosure respecting security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal by operation of section 580d of the Code of Civil Procedure. The waiver was expressed in language recommended by the provisions of Civil Code section 2856, and is enforceable as against the guarantors.

■ Parties to a mortgage agreement may contractually waive defenses under New York law. (*National Loan Investors, L.P. v. Goertzel* (N.Y.App.Div. 1998) 251 A.D.2d 639, 640 [676 N.Y.S.2d 605]; *Central Funding Co. v. Deglin* (N.Y.App.Div. 1979) 67 A.D.2d 673 [412 N.Y.S.2d 184, 185].) Lakemont has not pointed to any New York or California case holding that a party to an agreement may not waive a statute of limitations defense. The trial court determined that whether New York law applied or not, the result would have been the same because of the express contractual waiver of antideficiency defenses. We agree. ■ Lakemont waived any right to claim the protection of the antideficiency law. As a matter of law, Gramercy was entitled to summary adjudication of Lakemont's liability under the guaranty agreement.

### (3) *Nevada Law Has No Application.*

Lakemont argues that because Lakemont Homes Nevada, Inc., and Lakemont Communities Nevada, LLC, are Nevada corporations, Nevada law is applicable in the event we should determine that New York law does not apply. Nevada law has absolutely no application to this dispute: it is not the state where the real property is situated, nor the state where the contract was formed or executed, nor the state whose laws the parties agreed should govern the contract.

## DISPOSITION

The judgment is affirmed. Gramercy is awarded costs on appeal.

Hollenhorst, J., and Miller, J., concurred.