Filed 4/24/26  Temple View Capital Funding v. Garnicki CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| TEMPLE VIEW CAPITAL FUNDING, LP,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TONY GARNICKI,<br><br>    Defendant and Respondent. | A172052<br><br>(San Francisco County Super. Ct. No. GCG-21-596732) |

Through its manager Tony Garnicki, Ocean Avenue Real Estate Fund, LLC (Ocean Avenue) obtained a loan from Temple View Capital Funding, LP (Temple View).  Garnicki personally guaranteed the loan, which was secured by real property.  After Ocean Avenue defaulted on the loan, Temple View sold the property in a nonjudicial foreclosure sale and sued Garnicki for the difference between the sale price and the outstanding balance on the loan (the deficiency).  The parties settled on the eve of trial, but Garnicki failed to make the first two payments required by the settlement agreement.  Temple View filed a motion to enforce the settlement agreement, which the court granted in part, entering the parties' stipulated judgment but awarding Temple View "$0.00" as "the remaining deficiency balance."  We agree with Temple View that this award of zero dollars was an error; therefore, we

1

reverse the judgment and remand to the trial court with instructions to reconsider Temple View's motion.

## BACKGROUND

### I. Legal Principles

"A real property loan generally involves two documents, a promissory note and a security instrument." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 (*Alliance Mortgage*).) "The security instrument secures the promissory note" and " 'entitles the lender to reach some asset of the debtor if the note is not paid. In California, the security instrument is most commonly a deed of trust.' " (*Id.* at p. 1235.) If the borrower defaults on the promissory note, the lender may sell the security (the real property) through a process called "foreclosure, which may be either judicial or nonjudicial." (*Id.* at p. 1236.)

"In a judicial foreclosure, if the property is sold for less than the amount of the outstanding indebtedness, the creditor may seek a deficiency judgment, or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of the sale." (*Alliance Mortgage*, *supra*, 10 Cal.4th at p. 1236.) "In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust." (*Ibid.*) The process is "less expensive" and quicker than judicial foreclosure; however, "the creditor may not seek a deficiency judgment" against the borrower due to "an elaborate and interrelated set of foreclosure and antideficiency statutes." (*Ibid.*)

A guarantor is a third party "who promises to answer for the debt or perform the obligation of another when the person fails to pay or perform." (*Gramercy Investment Trust v. Lakemont Homes Nevada, Inc.* (2011) 198 Cal.App.4th 903, 911 (*Gramercy*).) Thus, a guaranty agreement

memorializes "a separate and independent obligation from that of the principal debt" (*United Central Bank v. Superior Court* (2009) 179 Cal.App.4th 212, 215), and the "antideficiency statutes' protections generally do not extend to guarantors." (*LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3 Cal.App.5th 1067, 1075 (*LSREF2 Clover Property 4*).)

Here, according to the loan documents, Ocean View is the borrower, and Garnicki is the guarantor.

## II. Factual Background

In November 2018, Ocean Avenue obtained a $1,865,000 loan from Temple View. The loan was memorialized by a promissory note and secured by a deed of trust to real property located in San Francisco. The deed of trust granted Temple View a first priority lien and the right to foreclose on the San Francsico property if Ocean Avenue defaulted on the promissory note.

Garnicki, Ocean Avenue's manager, guaranteed Ocean Avenue's performance on the note by signing a personal guaranty in which he "waive[d] any and all rights or defenses arising by reason of: (A) any 'one action' or 'anti-deficiency' law or any other law which may prevent [Temple View] from bringing any action, including a claim for deficiency, against [Garnicki], before or after [Temple View's] commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale."

In October 2019, Ocean Avenue defaulted on the note, and in October 2020, Temple View sold the property pursuant to the deed of trust at a non-judicial foreclosure sale. The property sold for $1,000,000, leaving a deficiency balance of $975,039.

In November 2021, Temple View filed a complaint for breach of personal guaranty and deficiency judgment against Garnicki. The parties

3

proceeded to trial call in May 2024 before settling at a mandatory settlement conference presided over by the trial court. The court approved of the parties' oral settlement and retained jurisdiction for enforcement.

Afterward, the parties executed a written settlement agreement and a stipulation for entry of judgment with an accompanying stipulated judgment. The settlement agreement provided that Garnicki would pay Temple View $200,000 in installment payments of $30,000 over a period of five and a half months. If Garnicki failed to comply with the payment schedule, Temple View would issue a notice of default and then could contact the court for "a briefing schedule to determine the Deficiency owed on the Loan and thereafter enter the Stipulated Judgment against Garnicki in an amount that represents the difference between the Deficiency and any payments Garnicki made to Temple View" under the settlement agreement.

The stipulated judgment ordered "that [Garnicki] is in breach of the parties' written Confidential Settlement Agreement and Mutual Release ('Agreement') and, therefore, [Temple View] shall recover from [Garnicki] the sum of $ [blank line], which represents the difference between the outstanding deficiency balance on the loan at issue and the amount that Garnicki paid towards the two-hundred thousand dollar ($200,000.00) settlement payment." Although "Garnicki dispute[d] whether or not a deficiency balance remained on the Loan after the Foreclosure and subsequent sale of the Property and the amount of the deficiency balance," he otherwise "approve[d]" the stipulated judgment and "consent[ed] to its entry" upon default.

After Garnicki's first check was late, Temple View provided Garnicki with notice of default and contacted the court with a request for hearing. The parties thereafter negotiated a withdrawal of the request, and Garnicki, who

4

had transmitted a check in the interim, agreed to make future payments via wire transfer.  But the check was returned for insufficient funds, and Garnicki failed to transfer the second payment.  Temple View again served a notice of default and, after contacting the court, filed a motion to enforce the settlement agreement that attached the parties' stipulated judgment.  Temple View calculated the deficiency balance to be "no less than $1,634,086.49."

Garnicki opposed the motion, arguing, as relevant to this appeal, that Temple View was "estopped" from recovering a deficiency judgment because it had non-judicially foreclosed on the property, and "the *Gradsky* Defense[1] precludes deficiency judgments . . . unless the lender elects the relatively cumbersome remedy of judicial foreclosure."  Garnicki also disputed Temple View's calculation of the deficiency amount, instead asserting "that only $87,730.02 could possibly remain as a deficiency balance," and that Garnicki would be willing to stipulate to judgment in that amount.

At the hearing on Temple View's motion to enforce, the court determined that *Gradsky* applied and thus Temple View was "estopped" from pursuing a deficiency judgment against Garnicki.  The court subsequently entered a modified version of the stipulated judgment, which awarded Temple View a zero dollar deficiency amount and removed reference to the settlement agreement:  "Temple View shall recover from defendant Tony Garnicki ('Garnicki') the sum of $0.00, which is the remaining deficiency balance after the underlying foreclosure in this matter."

Temple View filed a timely notice of appeal from the judgment.

---

[1] *Union Bank v. Gradsky* (1968) 265 Cal.App.2d 40, 47 (*Gradsky*), concluded that a lender was "estopped from pursuing the guarantor for a deficiency following a nonjudicial sale of the security."

5

On appeal, Temple View argues *Gradsky* does not apply, thus, the guaranty agreement is valid and enforceable, and Garnicki is liable for the deficiency, which the court should have calculated and awarded per the settlement agreement.

For his part, Garnicki agrees the settlement agreement is "clearly enforceable" and gave Temple View "the right to reopen the litigation in the event of default [by Garnicki], and to seek entry of a deficiency judgment it could prove was owed at the time of the foreclosure sale." However, Garnicki argues that *Gradsky* precludes Temple View from seeking a deficiency judgment after a nonjudicial foreclosure, a defense that Garnicki claims he never waived. Thus, according to Garnicki, the court's judgment "followed the parties' agreement exactly" and should be affirmed.

We agree with Temple View; to the extent Garnicki was entitled to assert the *Gradsky* defense, he waived that right as part of the guaranty agreement. Therefore, the trial court erred in concluding that *Gradsky* precluded a deficiency judgment. (See *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 35 ["We review the trial court's ruling on a [motion to enforce a settlement agreement] de novo for errors of law"].)[2]

---

[2] Garnicki urges us to apply the substantial evidence standard of review, which is generally reserved for review of a trial court's "factual findings." (*J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 984 [" 'The trial court's factual findings on a motion to enforce a settlement . . . "will not be disturbed if supported by substantial evidence" ' "].) Here, however, whether the guaranty agreement waived the *Gradsky* defense is a matter of contract interpretation and therefore a question of law, not fact. (*LSREF2 Clover Property 4*, *supra*, 3 Cal.App.5th at p. 1076 [" 'interpretation of a writing involves a question of law for de novo review by the appellate court' "].)

6

California's antideficiency laws (Code Civ. Proc., §§ 580a–580e, 726), as relevant here, "prohibit a lender from obtaining a deficiency judgment from a borrower following a nonjudicial foreclosure of real property." (*LSREF2 Clover Property 4, supra,* 3 Cal.App.5th at p. 1074.) However, these statutory antideficiency "protections generally do not extend to guarantors." (*Id.* at p. 1075.)

In 1968, *Gradsky* addressed "a question of first impression in California": whether a creditor could "recover from the guarantor the unpaid balance upon [a promissory] note following the creditor's nonjudicial sale of the security." (*Gradsky, supra,* 265 Cal.App.2d at p. 41.) Recognizing that the "creditor's recovery is not directly barred" by the antideficiency statutes, the court applied "the principles of estoppel" to prohibit the lender from recovering against the guarantor. (*Ibid.*) *Gradsky* reasoned, in relevant part, that it would be inequitable to allow the lender to seek deficiency from the guarantor because the lender's election of nonjudicial foreclosure "destroys" the guarantor's ability to recover against the borrower. (*Id.* at pp. 46–47.)

The *Gradsky* defense, however, can be waived. (*Cathay Bank v. Lee* (1993) 14 Cal.App.4th 1533, 1535 (*Cathay Bank*) ["The dispositive issue before us is whether Lee explicitly waived what might be called the '*Gradsky* defense' "]; see also *CADC/RADC Venture 2011-1 LLC v. Bradley* (2015) 235 Cal.App.4th 775, 784 ["a lender may recover a deficiency judgment from a guarantor who waives his or her antideficiency protections"]; *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 155 ["the protection afforded the guarantor by the *Gradsky* rule may be expressly waived"].)

Here, Garnicki argues the guaranty agreement's waiver was ineffective, relying upon *Cathay Bank v. Lee, supra,* 14 Cal.App.4th 1533. In

*Cathay Bank*, the court concluded that the guaranty agreement before it—which stated the " 'Guarantor shall be liable to Bank for any deficiency resulting from the exercise by it of any such remedy' " including " 'exercise of power of sale' "—was not sufficiently explicit to waive the *Gradsky* defense. (*Cathay Bank*, at pp. 1536, 1539.)

Unfortunately for Garnicki, the Legislature enacted Civil Code section 2856 in response to *Cathay Bank*'s "stringent requirements on the wording and interpretation of a guarantor's waiver of a defense arising from the principal's rights under the antideficiency statutes." (*Gramercy*, *supra*, 198 Cal.App.4th at p. 911; accord, *River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1418 ["In apparent response to *Cathay Bank*'s strict holding, the Legislature enacted [Civil Code] section 2856"]; *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 544.)

Under Civil Code section 2856, a guarantor "may waive any or all of the following:  [¶] . . . [¶] (3) Any rights or defenses the guarantor . . . may have because the principal's note or other obligation is secured by real property . . . [including] any rights or defenses that are based upon, directly or indirectly, the application of [the antideficiency laws]." (See also *California Bank & Trust v. DelPonti* (2014) 232 Cal.App.4th 162, 166 ["Civil Code section 2856 provides that any guarantor or other surety, including a guarantor of a note secured by real property, may waive rights and defenses that would otherwise be available to the guarantor"].)  Section 2856 does not require "any particular language or phrases . . . or any references to statutory provisions or judicial decisions" to be effective.  (Civ. Code, § 2856, subd. (b).)

The guaranty agreement language here—which expressly waived "any and all rights and defenses arising by reason of . . . 'anti-deficiency' law . . . including a claim for deficiency, against Guarantor, before or after Lender's

8

commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale"—was sufficiently explicit to waive Garnicki's *Gradsky* defense and any protections under the antideficiency laws. (See, e.g., *Gramercy*, *supra*, 198 Cal.App.4th at p. 912 [waiver of "all rights and defenses arising out of an election of remedies by the creditor" was "clear" and "unequivocal" waiver of antideficiency protections].) Accordingly, the trial court erred in concluding the *Gradsky* defense barred recovery from Garnicki under the settlement agreement.[3] We therefore remand the matter to the trial court with instructions to vacate its judgment and reconsider Temple View's motion to enforce the settlement agreement in light of our holding that the *Gradsky* defense does not shield Garnicki from a deficiency judgment.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with instructions to vacate the judgment and reconsider Temple View's motion to enforce the settlement agreement consistent with this opinion. Appellant may recover the costs of appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

---

[3] Because we conclude Garnicki has waived any *Gradsky* defense he may have had, we do not address Temple View's attempt to factually distinguish *Gradsky* based on the type of underlying loan.

9

DESAUTELS, J.

We concur:

RICHMAN, ACTING P. J.

MILLER, J.

*Temple View Capital Funding, LP v. Garnicki* (A172052)