Filed 6/12/14  IMV 11 Palm v. Pinn CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| IMV 11 PALM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ALAN R. PINN, et al.,<br><br>    Defendants and Respondents. | B246323<br><br>(Los Angeles County<br>Super. Ct. No. GC046072) |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. Edward Simpson, Judge.  Reversed.

Shumener, Odson & Oh, Robert J. Odson and Adam C. Doupe for Plaintiff and Appellant.

Saied Kashani for Defendants and Respondents.

_____

IMV 11 Palm LLC (appellant) filed a lawsuit for breach of guaranty and money had and received against respondents Alan Pinn and David Pinn (individually referred to by their first names, collectively referred to as the Pinns). After the trial court granted the Pinns' motion for summary judgment, appellant appealed. We reverse the judgment (order granting summary judgment).

FACTUAL & PROCEDURAL BACKGROUND

1. Summary of the Case

Appellant's predecessor in interest, IndyMac Bank F.S.B. (IndyMac) financed a real estate loan (the Marseilles Loan) to a California limited partnership named PBP, Limited Partnership (hereinafter PBP LP).[1] The general partners of PBP LP were the Pinns. In February 2005, the Pinns executed a promissory note on behalf of PBP LP in the amount of $45 million (the Note). Pursuant to a document entitled "Building Loan Agreement" the obligation was secured by a parcel of land in Contra Costa County (the Property) which PBP LP was to develop as residential housing. Alan and David, as individuals, executed a General Guaranty (Guaranty), also dated February 17, 2005, pursuant to the Building Loan agreement. The Guaranty contained detailed waiver provisions, which stated, inter alia, "The Guarantor waives all rights and defenses that the Guarantor may have because the Borrower's debt is secured by real property. . . . These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure."

In 2007, the Pinns requested that PBP LP be replaced as borrower on the Note by two new entities, Brentwood Investors I Inc., a California corporation (Brentwood), and PBP Union LLC, a limited liability company, (PBP Union). IndyMac agreed, but in order to protect its lien position on the real estate, drew up a number of agreements, including an Assumption Agreement, which provided, inter alia, that Brentwood and PBP

---

[1]     The loan is also referred to by the parties as the Brentwood loan or the Palmilla loan.

2

Union agreed to assume all of PBP LP's obligations as if they "had originally executed and delivered the Loan Documents instead of Existing Borrower."  The Pinns also executed a document entitled "Consent and Reaffirmation Agreement of Guarantor" which provided that their obligations under the Guaranty "shall remain unaffected by the Assumption Agreement."

IndyMac only disbursed approximately $18 million to PBP LP.  IndyMac also made another loan to a corporation called Bay Colony Investors II, Inc. (the Bay Colony loan).  The Pinns executed the promissory note as officers of Bay Colony Investors II, Inc.  The Pinns also executed a guaranty as individuals  in connection with the Bay Colony loan.

In July 2008, IndyMac closed and the Federal Deposit Insurance Corporation appointed a receiver.  The Marseilles loan was assigned to IndyMac Venture, LLC and then to appellant.  For ease of reference, we shall refer to IndyMac, IndyMac Venture LLC and appellant collectively as Lenders.

Brentwood and PBP Union failed to make payments due under the Note.  The Pinns did not make any payments pursuant to the Guaranty.  Lenders commenced an action against Brentwood, PBP Union and the Pinns for inter alia, judicial foreclosure, and breach of the Guaranty.  Lenders ultimately pursued a trustee's sale or nonjudicial foreclosure against the Property, received a credit bid of approximately $2.4 million, and amended the complaint to add causes of action against the Pinns for breach of the Guaranty and money had and received for the amount of the deficiency remaining after the sale.

The Pinns moved for summary judgment asserting that the waivers contained in the Guaranty were not effective and that Lenders could not pursue them for any deficiency judgment after the nonjudicial foreclosure.  Their argument was based on case law which holds that although a guarantor may waive statutory anti-deficiency protections, those waivers are invalid if the guarantors are essentially the individuals liable for the underlying obligation.  The Pinns asserted that as general partners of PBP

3

LP, they were obligated under the Note and thus could not be liable for any deficiency judgment.

In opposition to the motion, Lenders asserted that because of the Assumption Agreement, the Consent and Reaffirmation of Guarantor, and other documents entered into after the loan was made, the Pinns reaffirmed they were liable under the Guaranty. Lenders argued that because the principal borrowers of the Note were Brentwood, a corporation and PBP Union, a limited liability company, the Pinns cannot assert they were personally obligated under the note and thus their waivers of anti-deficiency protection were valid and enforceable.

The trial court granted the Pinns' summary judgment motion and appellant appealed.

We now examine the documents and proceedings in detail.

*2. The Guaranty*

The Guaranty stated, in pertinent part:  "The Guarantor absolutely and unconditionally guarantees the punctual and complete payment and performance when due . . . of the following (the Guaranteed Obligations"): (a) all present and future indebtedness evidenced by the Note . . . in the face principal amount of $45,000,000.00 . . . and (b) all other present and future obligations of the Borrower to the Lender under the Loan Documents . . . ; in each case as such indebtedness and other obligations may from time to time be supplemented, modified, amended, renewed and extended, whether evidence by new or additional documents. . . .  This Guaranty is a guaranty of payment and performance and not of collection and applies to all Guaranteed Obligations, whether existing now or in the future. . . .  *Guarantor waives all rights and defenses arising out of any election of remedies by the Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise. [¶]  The Guarantor waives all rights and defenses that the Guarantor may have because*

4

*the Borrower's debt is secured by real property.* The means, among other things: [¶] 1. The Lender may collect from the Guarantor without first foreclosing on any real or personal property collateral pledged by the Borrower. [¶] 2. If the Lender forecloses on any real property collateral pledged by the Borrower: [¶] (a) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. [¶] *(b) The Lender may collect from the Guarantor even if the Lender, by foreclosing on the real property collateral, has destroyed any right the Guarantor may have to collect from the Borrower. [¶] This is an unconditional and irrevocable waiver of any rights and defenses the Guarantor may have because the Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defense based upon Section 580a, 580b, 580c or 726 of the California Code of Civil Procedure. [¶] The Guarantor further waives: (i) any defense to the recovery by the Lender against the Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any Security for this Guaranty after a nonjudicial sale . . . (ii) any rights, defenses or benefits that are or may be available to the Guarantor by reason of Section 2787 to 2855, inclusive, or the California Civil Code. . . .* [¶] THE GUARANTOR HEREBY ACKNOWLEDGES THAT (A) THE GUARANTOR HAS CONSULTED WITH LEGAL COUNSEL TO UNDERSTAND THE FULL IMPACT OF THE WAIVERS MADE BY THE GUARANTOR PURSUANT TO THIS GUARANTY; . . . (B) THE GUARANTOR UNDERSTANDS THE FULL IMPACT OF SUCH WAIVERS; AND (C) SUCH WAIVERS HAVE BEEN KNOWINGLY AND WILLINGLY MADE BY THE GUARANTOR." (Italics added.)

*3. The Assumption Agreement and subsequent reaffirmations*

In October 2007, IndyMac and PBP LP signed an "Assumption Agreement" which provided that Brentwood and PBP Union assumed the role of the borrowers under the Marseilles loan and replaced PBP LP. The Assumption Agreement stated that Brentwood and PBP Union agreed to assume all of PBP LP's obligations under the loan

as if they "had originally executed and delivered the Loan Documents instead of Existing Borrower. . . . Lender and New Borrower acknowledge and agree that the Guaranty, the Environment Guaranty and the Environmental Indemnity continue to not be secured by the Deed of Trust." The Assumption Agreement also provided that it did not create a new loan, but was the "Same Indebtedness."

In December 2007, a "Fourth Letter Agreement" was signed by Alan on behalf of Brentwood and Alan and David on behalf of PBP Union which extended the maturity date of the loan. The Pinns signed an addendum page to the Fourth Letter Agreement which stated "Guarantor hereby reaffirms the full force and effectiveness of its General Guaranty . . . dated February 17, 2005, as well as its acknowledgement that its obligations under these guaranties are separate and distinct from those of the Borrower on the Loan."

In May 2008, a document entitled "Second Modification Agreement" was signed by Alan on behalf of Brentwood, and Alan and David on behalf of PBP Union. [2] This agreement, inter alia, extended the maturity date of the loan and changed the face amount of the loan to $17.9 million. On the same date, a separate document entitled "Consent and Reaffirmation of Guarantor" was signed by the Pinns which provided in pertinent part: "Guarantor further hereby (a) reaffirms the full force and effectiveness of the General Guaranty . . . (b) agrees that Guarantor's obligations under the Guaranties shall remain unaffected by the Modification Agreement, and . . . (c) agrees that Guarantor's obligations under the Guaranties are separate and distinct from those of Borrower with respect to the loan, and (d) agrees that the Guaranties continue to not be secured by the Deed of Trust."

4. *The Breach, Lawsuit and Foreclosure*

In December 2008, Brentwood and PBP Union failed to make payments of interest due, and failed to make payments of principal due in January 2009. The Loan matured

---

[2]     Alan signed individually and as Trustee for the David R. Pinn Ultra Trust. David signed individually and as Trustee for the Montalvo Trust.

6

on February 15, 2010, and was not repaid.  The amount owing was approximately $17 million.

The Pinns did not make any payments pursuant to the Guaranty.

A notice of default with respect to the Property was recorded on September 8, 2010.

On September 20, 2010, Lenders filed a lawsuit against Brentwood, PBP Union for specific performance, appointment of receiver, judicial foreclosure, and recovery of personal property.  It also named as defendants Alan and David and their wives, in causes of action for breach of guaranty for the Marseilles loan as well as the Bay Colony loan.

On May 6, 2011, Lenders conducted a trustee's sale of the Property.  The Property was sold for approximately $2.4 million.

A First Amended Complaint contained causes of action against the Pinns only for (1) breach of guaranty under the Marseilles loan, (2) breach of guaranty under the Bay Colony loan, and (3) money had and received for $17 million.

*5.  The Summary Judgment Motion*

In June 2012, Alan and David filed a motion for summary judgment.  The motion contended that the waivers in the Guaranty of the one-action rule and anti-deficiency judgment protections were ineffective since Alan and David were general partners of PBP LB and that their obligations were unaffected by the assumption agreement.  They also claimed that they were not liable under the third cause of action for money had and received because the money was not lent for the benefit of appellant.[3]        In support of their motion, Alan and David submitted discovery responses and declarations from Alan and Saied Kashani, their attorney.

In Alan's declaration, he stated that at all times he and David were the general partners of PBP LP, and included a certificate of limited partnership for PBP LP.  He

---

[3]     The second cause of action had to do with the Bay Colony loan so we do not address the summary judgment motion as to that cause of action.

7

stated after the loan closing, they were never asked to execute a new guaranty and that all of the agreements related to the Marseilles Loan and Assumption Agreement were drafted by Lenders without any input. The Pinns did not have the opportunity to change any of the wording.

Kashani's declaration included various pleadings from this and a related case, and discovery responses. The related case, *Sean William Co., Inc. v. Pinn Brothers Construction, Inc.*, was brought in the Superior Court of Contra Costa County, No. MSC-08-03282. In that case, Daris Buckler declared he was a Senior Vice President at One West Bank, which acquired loans from the Federal Deposit Insurance Company as the Receiver of IndyMac and appellant, including the Marseilles loan. Appellant is a subsidiary of One West Bank. Buckler was formerly employed by IndyMac and had personally worked with Alan and David in the administration of the Marseilles loan. He attached and authenticated the various loan documents and discussed the loan disbursements. He did not provide any evidence of oral negotiations in entering into the loan or the subsequent Assumption Agreement.

Lenders objected to the declarations of Alan and Kashani on numerous grounds.

In opposition, Lenders argued that Alan and David reaffirmed the Guaranty on three separate occasions. They point to Alan's deposition testimony that he understood that he was to "step into the feet of the borrower" when he signed the Guaranty.

Lenders submitted the declarations of Kenneth D. Fox and Staci Tomita in opposition to the summary judgment motion.

Fox, an attorney of Lenders, participated in the negotiations regarding the Marseilles loan in 2010. Tomita, also an attorney for Lenders, submitted various documents and discovery responses. She submitted the deposition testimony of Alan Pinn in which he stated that Brentwood was formed for the purpose of developing real estate. Its shareholders are Alan and David. Alan stated that PBP Union was formed in 2003 for the purposes of holding a small apartment building and is in the business of real estate development. PBP Union's members are Alan and David and it never took out any

8

other loan besides the Marseilles loan. Alan said he had spoken to someone at IndyMac about the change to Brentwood and PBP Union as early as 2005.

The trial court granted summary adjudication as to the first cause of action for breach of guaranty and the third cause of action for money had and received. It stated in its minute order: "The original borrower was PBP, LP, a limited partnership of which David and Alan Pinn were the general partners. Defendants executed a general guaranty. . . but because of their status as general partners they were personally liable regardless. If plaintiff had proceeded with a nonjudicial foreclosure sale while PBP, LP was the borrower, such sale would have exonerated defendants from further liability pursuant to the unwaivable protection of the anti-deficiency statutes, notwithstanding the language of the guaranty. . . . [¶¶] The legal issue raised by this motion is whether defendants' obligation was affected by the Assumption and Modification Agreement, in which new borrowers were substituted for PBP, LP. The court answers this legal question in the negative. Plaintiffs assert that the phrase contained in the Consent and Reaffirmation Agreement, 'Borrower here[af]ter shall mean new Borrower' has the effect of replacing the new borrowers for PBP, LP as if PBP, LP never existed. Under this reading of the document, defendants would be guaranteeing the debt of a corporation (rather than a limited partnership) and therefore be liable for the deficiency. This argument is unpersuasive and unsupported by any reference to the document itself. [¶] In the Consent and Reaffirmation Agreement, defendants agreed that their obligations under the guaranties remained unaffected by the Assumption Agreement. The court finds the word 'unaffected' to be significant. Defendants were personally obligated for the original loan but were also protected by the anti-deficiency statutes. To find that they lost such protection in signing the consent and Reaffirmation Agreement would render the word 'unaffected' meaningless."

Judgment was entered in favor of Alan and David on December 17, 2012. This appeal followed.

9

Appellant contends that the trial court erred in granting the summary judgment motion because (1) the Consent and Reaffirmation Agreement was not intended to discharge the Guaranty; (2) the Pinns repeatedly reaffirmed the Guaranty; (3) the Pinns' waivers of the anti-deficiency statutes are enforceable; and (4) in order to prevail on the money had and received cause of action there was no need to establish that money be provided for the benefit of Lenders.

*DISCUSSION*

1. *Summary Judgment Rules*

"The purpose of a motion for summary judgment is to discover whether the parties possess evidence which requires the fact-weighing procedures of a trial. [Citations.]" (*Gramercy Investment Trust v. Lakemont Homes* (2011) 198 Cal.App.4th 903, 908.)

A defendant's motion for summary judgment should be granted if the admissible evidence in the papers submitted by the parties "show[s] that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)

Initially, a moving defendant has the "burden of showing that a cause of action has no merit," such as by showing "that one or more elements of the cause of action . . . cannot be established," or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subds. (o), (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) If the moving defendant meets that burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action" or as to the defense proffered by the defendant. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849.)

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 860.) We consider "all of the evidence the parties offered in connection with the motion (except that which the court properly excluded)

10

and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) When, as here, the plaintiff is the losing party, "'we view the evidence in the light most favorable to plaintiff[]' [citation], and we 'liberally construe' plaintiff's evidence and 'strictly scrutinize' that of defendant 'in order to resolve any evidentiary doubts or ambiguities in [plaintiff's] favor' [citation]." (*O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 284.) "The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution." (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 35.)

2. *Anti-deficiency legislation and waiver*

Code of Civil Procedure section 726, known as the one-action rule, provides that a creditor may not obtain a personal deficiency judgment against a debtor without first exhausting the security for the debt. (*Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134, 140.) The only action available to enforce a debt secured by a real property mortgage or deed of trust is by foreclosure on the real property. (*Ghirardo v. Antonoli* (1996) 14 Cal.4th 39, 47.) After a judicial foreclosure sale, the creditor is entitled to a judgment against the debtor for the difference between the amount of debt and the greater of the fair value of the property or sales price. (*Ibid.*) If the creditor proceeds by way of a private trustee's sale, or nonjudicial foreclosure, it is not entitled to a deficiency judgment. (Code Civ. Proc., § 580d.)

A guarantor may waive anti-deficiency protections but a debtor may not. (*Gramercy v. Lakemont, supra,* 198 Cal.App.4th at p. 911.) Civil Code section 2856 expressly allows guarantors to waive the one-action rule and anti-deficiency protections for real property loans.[4] "Analogous waivers have withstood challenge and are enforceable." (*Gray1 CPB LLC v. Kolokotronis* (2011) 202 Cal.App.4th 480, 491.)

---

[4]    Civil Code section 2856 provides: "(a) A guarantor or other surety, including a guarantor of a note or other obligation secured by real property . . . may waive any or all of the following: . . . (3) Any rights or defense the guarantor or other surety may have

Where the parties executing the guaranties are sophisticated business persons with expertise in real estate development, a finding of waiver of anti-deficiency protections is appropriate where the language of the waiver evinces such an intention. (*River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1417; *Gramercy, supra,* 198 Cal.App.4th at p. 911.)

In order to collect a deficiency judgment from a guarantor, the guarantor must be a true guarantor and not merely the principal debtor under a different name. The anti-deficiency laws cannot be waived under these circumstances. (*The Cadle Company II v. Harvey* (2000) 83 Cal.App.4th 927, 932, citing *Passansi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1508.)

"Courts have recognized a distinction between true, independent contracts of guaranty and guaranties executed by the primary obligor. [Citation.]" (*Talbott v. Hustwitt* (2008) 164 Cal.App.4th 148, 152.) "It is well established that where a principal obligor purports to take on additional liability as a guarantor, nothing is added to the primary obligation. [Citations.] The correct inquiry set out by the authority is whether the purported debtor is anything other than an instrumentality used by the individuals who guaranteed the debtor's obligation, and whether such instrumentality actually removed the individuals from their status and obligations as debtor." (*Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308, 319-320.)

In *River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, a bank made two construction loans to a limited partnership formed for the specific purpose of obtaining the construction loans. Although the limited partners of the partnership were a corporation and a limited partnership, two individuals, husband and wife had effective control over the entire partnership. The two individuals executed four guaranties, two as individuals, and two on behalf of their own revocable trust. The bank commenced

___

because the principal's note or other obligation is secured by real property. . . These rights or defenses include, but are not limited to any rights or defense that are based upon directly or indirectly, the application of Section 580a, 580b, 580d or 726 of the Code of Civil Procedure to the principal's note or other obligation."

12

nonjudicial foreclosure proceedings after the loan was in default and the property was sold, leaving a $12.9 million deficiency. The bank then sued on the guaranty agreements. After summary judgment motions were filed by all parties, the trial court entered judgment in favor of the guarantors on the causes of action to enforce the guaranty. (*Id.* at p. 1409.) On appeal, the Court of Appeal reversed the judgment in favor of the guarantors. It affirmed in part and reversed in part the order denying the bank's motion for summary adjudication and affirmed the order granting summary adjudication against the guarantors on their cross-claim. The court considered that the purpose and effect of the guaranty agreements were to recover deficiencies and there was a triable issue of fact concerning the sham guaranty defense. (*Id.* at pp. 1423-1424.)

In *Torrey Pines v. Hoffman* (1991) 231 Cal.App.3d 308, a bank made a construction loan to a family trust. The trust was a revocable living trust that a husband and wife had created for estate planning purposes. The trust, together with a third party, entered into an agreement with the bank to develop an apartment complex. The trust and the third party signed a promissory note for the loan, which was secured by a deed of trust on the property. The husband and wife each signed a personal guaranty of the loan. The guaranty contained a waiver of anti-deficiency protections. The borrowers defaulted on the note and the bank commenced both judicial and nonjudicial foreclosure proceedings. Because it received additional security, the bank agreed to forbear foreclosure proceedings, but did not agree to amend or modify the note. The bank then followed through with nonjudicial foreclosure proceedings. The bank sold the property and then proceeded against the husband and wife on the personal guaranties. The bank dismissed the third party and the trust as defendants. (*Id.* at p. 315.) The trial court entered judgment in favor of the husband and wife because the bank had proceeded under its power of sale clause to nonjudicially foreclose on the property and the bank appealed.

On appeal, the court discussed the ability of a guarantor to waive the anti-deficiency protections. It held that the nature of the trust as an obligor posed an obstacle to the ability of the individuals to effectively waive these protections. It determined that

13

a principal obligor may not waive those provisions, so if the guarantor is in effect the principal obligor, any waiver is ineffective. It set forth the following inquiry: whether the debtor of the note is an instrumentality used by the individual guarantors and whether that instrumentality actually removed the individuals from their status as obligors and debtors. "Put another way, are the supposed guarantors nothing more than the principal obligors under another name? [Citation.]" (*Torrey Pines v. Hoffman, supra,* 231 Cal.App.3d at p. 320.) The court determined that the debt incurred by the trust imposed obligations on the individual husband and wife trustees. (*Id*. at p. 321.) It held that this particular trust did not separate the interests of the individuals from the trust and that the guaranties were not "true guaranties" and therefore the husband and wife must be treated as primary obligors. (*Id*. at p. 323.)

The *Torrey Pines* court then went on to consider the effect of the post-default forbearance agreement, which we will discuss *infra*.

In *The Cadle Company II v. Harvey, supra,* 83 Cal.App.4th 927, an inter vivos revocable trust purchased real property. The promissory note was signed by the trust and secured by a deed of trust encumbering the property. The individual settlor and trustee of the trust signed a personal guaranty of the note. The guaranty contained a waiver of any defense based on the bank's election of remedies under Code of Civil Procedure sections 580d and 726. After the trust defaulted in 1992, the parties entered into a forbearance agreement and restructured the debt. The individual, Harvey, agreed the guaranty remained binding notwithstanding the modifications. The trust defaulted on the modified note and the bank nonjudicially foreclosed on the property. After the trustee's sale, there was an excess balance due of over $1 million. The bank's assignee sued Harvey for breach of the guaranty. Harvey filed a demurrer, alleging the guaranty was a sham under *Torrey Pines*. On appeal, the court held that Harvey's guaranty was ineffective because he was the settlor and trustee of the trust and was essentially the principal obligor on the

14

note.  The creditor could therefore not pursue Harvey for a deficiency judgment.  (*Id.* at p. 933.)[5]

### 3.  *The provisions of the initial loan and the guaranty*

Looking at the initial loan agreements, we see that the Pinns were the only partners in PBP LP, the principal obligor.  The partnership agreement, submitted as an exhibit to Kashani's declaration, indicated that Alan and David were the only general partners, each with a 1 percent interest in the profits and losses, and the only limited partners, each with a 49 percent share of the profits and losses.  The partnership of PBP LP was formed in 1992, long before the Marseilles loan was made.

In *Torrey Pines, supra,* 231 Cal.App.3d 308 and *Cadle, supra*, 83 Cal.App.4th 927, the debtors on the promissory notes were trusts formed by the debtors as instrumentalities for the purposes of the loan.  The trusts were effectively controlled by the individuals and there was no separation between the trusts and individuals.  The *River Bank* case (*supra,* 38 Cal.App.4th 1400), involved a limited partnership, but it was formed for the express purpose of entering into the loan agreement.  *River Bank* considered evidence of the purpose and effect of the guaranty and determined there were triable issues of fact whether the individuals in the partnership were true guarantors.  In *Torrey Pines*, the court made a factual inquiry into the particular trust.

Here, there must also be a factual determination of whether the guaranties were "true guaranties."  (*River Bank, supra*, 38 Cal.App.4th at p. 1422.)  While there is evidence which demonstrates that the Pinns had effective control over PBP LP, there is no evidence that PBP LP was simply an instrumentality for the express purpose of obtaining the loan as in *River Bank*, nor was there evidence that there was a separation between the partnership and the individuals as in *Torrey Pines, supra*, 231 Cal.App.3d 308 and *Cadle, supra*, 83 Cal.App.4th 927.

---

[5]     The court also discussed the effect of the post-origination waiver, which we also discuss *infra*.

We now examine the relationship of the parties after the Assumption Agreement was signed.

*4. The effect of the Assumption Agreement*

Alan executed a declaration which stated that neither he nor David were asked to sign a new or different guaranty agreement in connection with the Assumption Agreement. He also stated that all the loan documents were drafted by Lenders without any input from Alan or David.

Alan testified in his deposition that they asked Lenders to change the borrower on the Note in order for a "1031 exchange"[6] to the Pinns' benefit. It was their idea to form Brentwood. David also testified it was part of a property exchange; although he did not remember whether it was a 1031 exchange, he agreed that it was made at their behest as borrowers.

PBP Union was formed to hold a small apartment building. Alan testified he and David were "the only members of PBP Union" but they signed the loan documents for PBP Union as individuals and on behalf of two trusts. PBP Union did not take out any other loans.

The Assumption Agreement provided that the assumption of the loan would backdate to the loan inception "as if New Borrower had originally executed and delivered the Loan Documents instead of Existing Borrower."

The Consent and Reaffirmation Agreements reaffirmed the "full force and effectiveness" of the Guaranty and the agreed that their obligations are "separate and distinct from those of Borrower with respect to the Loan" and that the guaranties "continue to not be secured by the Deed of Trust."

Alan and David signed at least two additional affirmations after the Assumption Agreement in December 2007 and May 2008. In each of those documents, they

---

[6] This presumably refers to 26 U.S. Code section 1031, an exchange of investment property to defer capital gains taxes. (*McGuire v. More-Gas Investments* (2013) 220 Cal.App.4th 512, 516, fn. 2.)

acknowledged that the obligations under the Guaranty were separate and distinct from the borrower on the Note.

In *Torrey Pines*, because the forbearance agreement specifically did not amend or modify the note or deed of trust, it did not result in a renewal of the loan. There was also no reference in the forbearance agreement to a waiver of the anti-deficiency protections and the agreement was not so ambiguous that parol evidence would aid in its interpretation. (*Torrey Pines Bank v. Hoffman, supra,* 231 Cal.App.3d at pp. 324-325.)

In *Harvey*, the plaintiff argued that because the guarantor's waiver at the loan origination is unenforceable, the guarantor's subsequent agreement to the loan modification was a knowing and intelligent post-origination waiver. The court held the modification agreement did not serve as an effective waiver of Code of Civil Procedure section 580b, citing *DeBerard Properties Ltd. v. Lim* (1999) 20 Cal. 4th 659, which holds that a principal obligor cannot validly waive the protections of Code of Civil Procedure section 580b even by post-origination agreements.

In *Torrey Pines* and *Harvey*, however, the principal obligor under the note remained the same. In this instance, the obligor changed to a completely different entity. We thus must examine the effect of this change and the subsequent loan agreements on the Guaranty.

"Guaranty contracts are construed according to the same rules as those used for other contracts, with a view to ascertaining the intent of the parties. [Citations.] Guaranty contracts 'may be explained by reference to the circumstances under which they were made and the matter to which they relate, the main object being to ascertain and effectuate the intention of the parties.' (*Bank of America v. Waters* (1962) 209 Cal.App.2d 635, 638.)" (*River Bank, supra,* 38 Cal.App.4th at p. 1415.)

When a guaranty agreement incorporates another contract, the two documents are read together and construed fairly and reasonably as a whole according to the intention of the parties. (*Central Building v. Cooper* (2005) 127 Cal.App.4th 1053, 1058, quoting *Cates Construction Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 39-40.) "Even without

17

the express term in the guaranty allowing modification, a modification of the underlying obligation generally does not revoke a continuing guaranty, but only modifies the guaranty in the same way that the underlying obligation is modified. The guarantor is only discharged if the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification." (*Central Building, supra*, 127 Cal.App.4th at p. 1061, citing Restatement 3d on Suretyship and Guaranty.)

"When any of the terms or provisions in a contract are ambiguous or uncertain, it is the duty of the trial court to construe it after the parties are given a full opportunity to produce evidence of the facts, circumstances and conditions surrounding its execution as well as the conduct of the parties to the contract. [Citations.] [¶] When two equally plausible interpretations of the language of a contract may be made, as in our case, parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory. [Citations.] Moreover, '[t]he foregoing of a legal right constitutes a consideration for the contract if the minds of the parties meet on the relinquishment of the right as a consideration.' [Citations.]" (*Walter E. Heller Western, Inc. v. Tecrim* (1987) 196 Cal.App.3d 149, 158.)

The language of the documents reflecting the change in borrower demonstrates an intent that the terms of the Guaranty remain valid. The clauses used in the Assumption Agreement, the Fourth Letter Agreement, and the Consent and Reaffirmation of Guarantor to the effect of "the Guarantor's obligations under the Guaranties are separate and distinct obligations from those of the Borrower" and "the Guaranties continue not to be secured by the Deed of Trust" directly contradict an intent by the parties to release the Pinns from any deficiency judgment.

Obviously, a number of factual questions remain in order to ascertain if the Guaranty was a true or sham guaranty after the Assumption Agreement and subsequent documents were signed. The finder of fact needs to evaluate the conflicting statements contained in the documents and examine the extrinsic evidence offered by the parties.

18

Once the parties produce evidence of the facts and circumstances surrounding the execution of all the loan documents, then there can be a determination of whether the obligations under the Guaranty were affected by the change in the borrower and the subsequent loan documents.

Thus there are triable issues of fact as to whether the obligation became transformed into a new obligation and whether the Guaranty was a true guaranty under which Alan and David could waive the anti-deficiency protections.

The Pinns' moving papers do not provide uncontroverted evidence the two parties mutually understood the effect of the Assumption Agreement on the original Guaranty. We conclude the trial court made a factual determination not supported by the evidence when it decided that the term "unaffected" meant that the Guaranty was a sham. Because so many factual issues needed to be resolved before the court could conclude that the anti-deficiency waivers in the Guaranty were invalid, summary judgment on the breach of guaranty count should not have been granted.

*5. Money Had And Received*

The Pinns argued in their motion for summary judgment that the cause of action for money had and received requires that money must be received for the benefit of the plaintiff and there was no benefit to the Lenders in this case.

"Money had and received" is a common count. "The common counts are in theory based on express or implied promises to pay money. [Citations.]" (*Moya v. Northrup* (1970) 10 Cal.App.3d 276, 281.) "The only essential elements of a common count are '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.'" (*Farmers Insurance Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460.) "[W]here one person pays out money for the benefit of another, at the latter's request, a common count for money paid, laid out and expended will lie. [Citations.]" (*Deicher v. Corkery* (1962) 205 Cal.App.2d 654, 661.)

"A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant

19

for the use of the plaintiff.'  [Citations.]" (*Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1623.)

Lenders' evidence established an indebtedness, consideration and nonpayment. Because the Note provided for interest and fees and the Pinns guaranteed that debt, there was a benefit provided to Lenders.  Summary judgment should not have been granted in favor of the Pinns in this count.

### DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court to deny the motion for summary judgment and reinstate the action.  Appellant shall recover its costs on appeal.


**WOODS, J.**


**We concur:**


**PERLUSS, P. J.**                                          **ZELON, J.**